IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSIAN MARRERO-VALENTÍN,

    Plaintiff,

    v.

PUERTO RICO CVS PHARMACY
LLC; ET AL.,

    Defendants.

CIVIL NO. 21-1330 (PAD)

OPINION AND ORDER

Delgado-Hernández, District Judge.

Plaintiff Josian Marrero-Valentín initiated this action against Puerto Rico CVS Pharmacy LLC ("CVS Pharmacy"), CVS PR Holding Company LLC ("CVS Holding"), and Luis Cruz ("Cruz") (collectively, the "defendants"), complaining of sexual orientation and disability discrimination, hostile work environment, retaliation, interference with protected leaves of absence, wrongful disclosure of confidential medical information, constructive discharge, and tortious conduct under federal and Puerto Rico law.[1]  Before the court is defendants' motion for summary judgment (Docket No. 72).  Based on the record as it has been presented, for the reasons explained below, the motion must be granted in part to dismiss the federal claims and the Law 44 claim with prejudice, and the remaining state claims, without prejudice.

---

[1] Specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.("Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); and Puerto Rico's (i) General Discrimination Statute, Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146, et seq.("Law 100"); (ii) Disability Discrimination Statute, Law 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501, et seq. ("Law 44"); Retaliation Against Employees for Offering Testimony Act, Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29, §§ 194, et seq. ("Law 115"); Unjust Discharge Act, Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185m ("Law 80"); General Tort Statute, Articles 1536 and 1540 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann. tit. 31, §§ 10801 and 10805; and Sections 1, 8, and 16 of Article II of the Constitution of Puerto Rico, P.R. Laws Ann. tit. 1, Bill of Rights, art. II, §§ 1, 8, and 16 (Docket No. 1).

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 2

## I.    PROCEDURAL BACKGROUND

On July 16, 2021, plaintiff initiated the action (Docket No. 1). On August 6, 2021, defendants moved to compel arbitration (Docket No. 7), which plaintiff opposed (Docket No. 12). On November 3, 2021, the court ordered the parties to conduct limited discovery on whether they had entered into an arbitration agreement covering the underlying claims in advance of an evidentiary hearing on the matter (Docket No. 26). On January 28, 2022, upon conclusion of that limited discovery, defendants withdrew the motion to compel arbitration and requested an extension of 30 days to answer the complaint or otherwise plead (Docket No. 35). The same day the court granted the request (Docket No. 36). On February 28, 2022, defendants answered the complaint denying liability and raising various affirmative defenses (Docket No. 37). On March 20, 2024, after the conclusion of all discovery, they filed a motion for summary judgment (Docket No. 72), which plaintiff opposed (Docket No. 81).[2] Defendants replied (Docket No. 86), and plaintiff sur-replied (Docket No. 90).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to

---

[2] In the opposition to summary judgment, plaintiff expressly waived and voluntarily dismissed the ADA and Law 44 claims. See, Docket No. 81, p. 3 (withdrawing claims). The dismissal shall be with prejudice. Rule 41(a)(2) of the Federal Rules of Civil Procedure permits a plaintiff to request dismissal of an action "by court order, on terms that the court considers proper." Id. The Rule also provides that such dismissal is without prejudice, "[u]nless the [court's] order states otherwise." Id. Courts have discretion to dismiss with prejudice in order "to protect the nonmovant from unfair treatment." Colón-Cabrera v. Esso Standard Oil Co. (Puerto Rico), 723 F.3d 82, 88 (1st Cir. 2013)(quotations omitted). Such unfairness can take numerous forms, including "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation [of] the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160 (1st Cir. 2000). On this account, "it is appropriate to consider whether a party proposes to dismiss the case at a late stage of pretrial proceedings or seeks to avoid an imminent adverse ruling." Colón-Cabrera, 723 F.3d at 88 (quotations and citation omitted). As mentioned earlier, plaintiff initiated the case on July 16, 2021 (Docket No. 1) and notified the dismissal on May 29, 2024 (Docket No. 81), that is, after nearly three years of litigation involving extensive and highly contested discovery. Plaintiff did not make any attempt to justify the belated move for voluntary dismissal (see, generally, Docket No. 81, p. 3). In consequence, the ADA and Law 44 claims will be dismissed with prejudice.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 3

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a).  A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Material issues are those that have "the potential of affecting the outcome of the case."  Calero-Cerezo v. U.S. Dept. of Just., 355 F.3d 6, 19 (1st Cir. 2004).  As to issues on which the nonmovant has the burden of proof, the movant "need do no more than aver" absence of evidence to support the nonmoving party's case. Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

All "reasonable factual inferences" must be drawn in favor of the party against whom summary judgment is sought.  Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013).  To resist summary judgment, however, the nonmovant must do more than show "some metaphysical doubt as to a material fact."  Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It cannot rely "upon conclusory allegations, improbable inferences, and unsupported speculation."  Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir.2000)(quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)).

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 4

## III.    FACTUAL SETTING

### A.  Plaintiff's Background.

Plaintiff is a homosexual male.  See, Complaint (Docket No. 1), ¶ 22; Defendants' "Statement of Uncontested Facts" ("SUF") (Docket No. 71), ¶ 1.[3]  On May 7, 2012, he began working for CVS Pharmacy as a Cashier in a CVS store located in Carolina, Puerto Rico.  See, SUF (Docket No. 71), ¶¶ 3-6; 15.[4]  On August 15, 2016, he was promoted to Shift Supervisor and transferred to a CVS store in Hato Rey, Puerto Rico.  Id.  On October 23, 2016, he was promoted to Operations Manager in the Hato Rey store, occupying that position until his last day of employment on December 5, 2019.  See, SUF (Docket No. 71), ¶¶ 7-8; 10; 14; Plaintiff's Statement of Additional Facts ("ASUF") (Docket No. 81), pp. 3-33, ¶ 1; Defendants' "Responses to Plaintiff's 'Statement of Facts'" (Docket No. 86), pp. 13-16, ¶ 1.[5]

---

[3] Defendants' SUF (Docket No. 71) includes 53 numbered paragraphs.  Plaintiff's opposing statements of facts, titled "Response to Relevant and/or Consequential Statements of Facts that CVS Allege are Uncontested" ("OSUF") (Docket No. 81, pp. 33-41), address only 7 of the 53 paragraphs contained in defendants' SUF –i.e., ¶¶ 22, 25, 27, 36, 39, 41 and 52.  Review of plaintiff's OSUF (Docket No. 81, pp. 33-41), ¶¶ 22, 25, 27, 36, 39, 41 and 52, shows they are defective, insofar as: OSUF (Docket No. 81) ¶¶ 25 and 52 consist of conclusory assertions or unsupported argumentation (see, Mancini v. City of Providence, 909 F.3d 32, 44 (1st Cir. 2018)("a [party] cannot avoid summary judgment by relying solely on conclusory allegations")); OSUF (Docket No. 81) ¶¶ 22, 25, 27, 36, 39, 41 and 52 are immaterial, argumentative, or unresponsive to, or fail to controvert, the propounded statement of fact; and the record citation in OSUF (Docket No. 81) ¶ 25 does not support the propounded factual averment and does not comply with the Local R. Civ. 56's specificity requirements (see, Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)(noting that statements that rely on broad references to exhibits fail to comply with Local Civ. R. 56(e)'s specific record citation requirement)).  See, generally, Fed. R. Civ. P. 56; Local Civ. R. 56.  Because plaintiff's opposing statements do not controvert defendants' statements at SUF (Docket No. 71), ¶¶ 22, 25, 27, 36, 39, 41, and 52, which are supported by the record, they are deemed admitted.  See, Local Civ. R. 56(c) and (e).  And, in light that plaintiff did not respond to any of the remaining 46 statements of fact that the defendants submitted, which are also supported (except as otherwise noted herein), those facts are admitted as well.  See, Natal Pérez, 291 F.Supp.3d at 219 (when a party improperly controverts facts, the court may treat those facts as uncontroverted).

[4] Plaintiff characterizes CVS Pharmacy and CVS Holdings as joint employers.  See, Docket Nos. 1, ¶ 21; 81, pp. 62-63.  Defendants deny that characterization.  See, Docket No. 71, ¶ 15.  Still, the parties do not dispute that CVS Pharmacy was plaintiff's employer, whether joint or not.  As such, the court will simply refer to plaintiff's employer as CVS.

[5] In plaintiff's response to the motion for summary judgment, he includes a section entitled "Statement of Facts as to which Genuine Issues Exist Preventing the Entry of Summary Judgment" (Docket No. 81, pp. 3-33), comprised of 81

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 5

Plaintiff reported to the Store Manager, who was first in command. See, SUF (Docket No. 71), ¶ 12. His responsibilities included supervising all store employees (except for the Store Manager) and watching over the store when the Store Manager was not present. See, SUF (Docket No. 71, ¶ 11. During his tenure in Hato Rey, the store had two Store Managers, Héctor Juan Ares, and from in or around January 2017, Luis Cruz. See, SUF (Docket No. 71), ¶¶ 9, 40. On December 5, 2019, plaintiff resigned effective immediately. See, SUF (Docket No. 71), ¶ 14. In the letter submitting the resignation, he stated that the reason for the resignation was, *inter alia*, the discrimination and hostile work environment that he felt he suffered at the hands of Mr. Cruz. See, Docket No. 71-5 (resignation letter).

### B. Incidents.

In his sur-reply, plaintiff asserts that the evidence necessary to oppose defendants' motion for summary judgment is found in his deposition testimony (Docket No. 81-3),[6] and in the unsworn statements under penalty of perjury of Ana Silvia Mercado (Docket No. 81-1) and José Alberto Morales Álvarez (Docket No. 81-2). In his view, those three items are "more than sufficient" to

---

numbered paragraphs that, as indicated in plaintiff's sur-reply, were meant to be statements of additional facts under Local Civ. R. 56(d). See, Docket No. 90, p. 18. Defendants responded to these additional statements of fact in their "Reply in Support of Motion for Summary Judgment . . ." (Docket No. 86), pp. 13-16, as supplemented in their "Supplemental Motion . . ." (Docket No. 98) (collectively, the "RASUF"). Defendants admitted ASUF (Docket No. 81) ¶¶ 1-2 (see, RASUF (Docket No. 86), ¶¶ 1-2), and denied the remaining statements that plaintiff submitted. Examination of those statements (ASUF (Docket No. 81), ¶¶ 3-81), reveals that they are defective in the same manner as his opposing statements. See, note 3, supra (identifying the deficiencies linked to plaintiff's OSUF (Docket No. 81), ¶¶ 22, 25, 27, 36, 39, 41 and 52.

[6] Other portions of transcripts of plaintiff's deposition sessions can be found at Docket Nos. 71-1 to 71-4.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 6

defeat summary judgment (Docket No. 90, p. 2).[7]  Thus, the court centers its factual inquiry on

those documents.

## IV.    DISCUSSION

### A.  Title VII.[8]

#### 1.  Disparate Treatment.

Plaintiff alleges that defendants discriminated against him because of his sex (i.e. sexual

orientation) in violation of Title VII (Docket No. 1, ¶¶ 63, 65).[9]  Title VII makes it unlawful for a

covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The prohibition

on sex discrimination covers discrimination on account of sexual orientation and gender identity.

See, Bostock v. Clayton County, 590 U.S. 644, 149 S.Ct. 1731, 1737, 1741 (2020)(so holding).

Thus, it is impossible to discriminate against a person for being homosexual or transgender without

discriminating against that individual based on sex.  Id. at 1741.

---

[7] The court observes that plaintiff apparently also kept contemporaneous personal notes, which he produced during discovery, wherein he documented instances of what he perceived as "incident[s]" or "situation[s]" at work.  See, SUF (Docket No. 71), ¶¶ 28-42; Docket No. 71-11.  However, plaintiff disowned those notes, as in plaintiff's own words, and among other things, they: (1) were not prepared by him but by his partner; (2) are not notarized; (3) are not authenticated by the person who allegedly prepared them; and (4) do not show or demonstrate absolutely anything in this case.  See, OSUF ¶¶ 36, 39, 41 (Docket No. 81, pp. 36-40 (signaling to other flaws in those notes)).  The court will indulge plaintiff's take as to the insufficiency of those notes and disregard those statements of fact that defendants submitted based solely on them, except to provide context to plaintiff's assertion that Shift Supervisor Juan Montero called him stupid and told plaintiff he did not communicate with him because plaintiff was gay.  See, infra.

[8] Plaintiff's Title VII claims revolve around disparate treatment; hostile work environment; and retaliation.  The discussion has been organized along these fault lines.  The Complaint also asserts constructive discharge as a separate and independent cause of action under Title VII (Docket No. 1, ¶¶ 75-79).  Still, in opposition to summary judgment, plaintiff clarified that he "is not attempting to establish a claim for constructive discharge under Title VII," but rather only under Law 80.  See, Docket No. 81, p. 53.  Given plaintiff's concession, there is no need to analyze a constructive discharge claim through the lens of Title VII.

[9] Even though Mr. Cruz is a defendant, he cannot be found liable under Title VII.

From this perspective, plaintiff complains that Mr. Cruz: excluded him from staff meetings; refused to speak to him in person and would mostly speak to him via WhatsApp, text messages, or through other employees who were plaintiff's subordinates; excluded plaintiff from the store's employee group chat in WhatsApp; did not consider plaintiff's input regarding matters pertaining to the job; denied plaintiff's requests for days off and/or cancelled them after they had been approved; cancelled plaintiff's vacations shortly before they were supposed to start; reduced plaintiff's working hours because he was studying at the university but not those of Mr. Montero who was also studying; and assigned plaintiff to close the store late at night and to open it early in the morning (Docket No. 81, pp. 41-44).[10]

On the understanding that the difference in treatment based on sex "must be intentional," Bostock, 149 S.Ct. at 1740, plaintiff argues that he has presented direct evidence of discrimination (Docket No. 81, p. 44). Direct evidence normally contemplates statements by a decisionmaker that directly reflect the alleged animus and "bear squarely on the contested employment decision." Vesprini v. Shaw Contract Flooring Servs., Inc., 315 F.3d 37, 41 (1st Cir. 2002). It "does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996). Furthermore, the statement must be "directly tied" to the decision, Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 52 (1st Cir. 2021), demonstrating on its face that the decision "was reached for discriminatory reasons." Danville v. Regional Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002). There is no such evidence in this case.

---

[10] Mr. Montero was Shift Supervisor in the Hato Rey store, and as such, plaintiff's subordinate.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 8

From what the court can glean from the record, the only decisionmaker with respect to plaintiff was Mr. Cruz, and nothing directly ties the events described earlier to anything he may have said. Nevertheless, the absence of direct evidence of discrimination is not fatal, for plaintiff may rely on the three-stage burden shifting framework drawn from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). To this end, plaintiff has the initial burden of establishing a prima facie case of discrimination. See, LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842-844 (1st Cir. 1993)(discussing framework). The burden "is not onerous." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If a prima facie case is established, a rebuttable presumption of discrimination arises, switching to the employer the burden of articulating a "legitimate, nondiscriminatory reason" for the action at issue. LeBlanc, 6 F.3d at 842. This is a burden of production, not of persuasion, such that the employer is merely required to present through the introduction of admissible evidence, reasons for its action "which would support a finding that unlawful discrimination was not the cause of the challenged employment action." Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994).

Should the employer satisfy this burden, the inference arising from the prima facie phase drops from the case. See, Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000)(so noting). In that instance, the sole remaining issue "is discrimination *vel non,*" which comes front and center. Vélez, 585 F.3d at 447. To carry the devoir of persuasion on this ultimate issue, the plaintiff must identify probative evidence that the reason given by the employer for its action is pretextual, that is, not its true reason but a pretext for discrimination. Id. This step effectively "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination," Domínguez-Cruz, 202 F.3d at 430 (quoting Burdine, 450 U.S. at 256), a burden which remains with the plaintiff "at all times." Burdine, 450 U.S. at 253.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 9

The elements of a prima facie case depend upon "the particular type of employment decision at issue." O'Horo v. Boston Medical Center Corporation, 131 F.4th 1, 13 (1st Cir. 2025). As relevant, plaintiff must submit some evidence to demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action at the hands of his employer; and (3) there is some evidence of a causal connection between his membership in a protected class and the adverse employment action. Id. Here, plaintiff is a member of a protected class. But he failed to show adverse employment actions.

An adverse employment action is one that results in "some harm respecting an identifiable term or condition of employment." Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). The harm does not have to be significant, serious, substantial, or qualified by any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. Id. Yet, it must carry consequences that leave the employee "worse off." Boston Medical Center Corporation, 131 F.4th at 18. And plaintiff failed to explain how the actions listed at the beginning of this Section

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 10

had any consequences that left him worse off.[11]  In the absence of a qualifying adverse action, the

disparate treatment claim must be dismissed.

## 2. Hostile Work Environment.

Plaintiff alleges to have been subjected to a hostile work environment because of his sex

(i.e. sexual orientation) in violation of Title VII (Docket No. 1).  A hostile work environment exists

"[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create and

abusive working environment."  Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003).

These claims "do not turn on single acts but on an aggregation of hostile acts extending over a

---

[11] Presumably, this should not have been difficult to accomplish.  But without plaintiff's explanation in place, the court can only speculate, and speculation is not a substitute for evidence or sufficient to survive dismissal in this procedural context.  At any rate, respecting the claim that plaintiff's work hours were reduced because he was studying, but not those of Mr. Montero, the court has no idea about the hours allegedly reduced to make a specific finding to that effect.  Additionally, as mentioned earlier, Mr. Montero was a Shift Supervisor, not Operations Manager like plaintiff, and plaintiff has made no effort to show that both were similarly situated.  As to closing and opening of the store, plaintiff stated that when he was first hired in 2012, he signed an agreement allowing him to enjoy eight hours of rest between shifts (Docket No. 71-3, p. 9).  The agreement –titled Flexible Work Agreement (Docket No. 81-7)– states that both the hour set to begin the workday and the period assigned for meals could be advanced or delayed provided there was a rest period of not less than 12 consecutive hours between daily work schedules; and when this and other requirements were met, hours in excess of eight within a 24 hour period resulting from having advanced or delayed the work schedule or the time for taking meals, would not be deemed overtime.  Id.  Plaintiff is not asking for overtime or claiming that the daily work schedule or meal periods were advanced or delayed.  As well, he was hired as a Part-Time Cashier (Docket Nos. 71-1, pp. 2; 71-2, pp. 9-10).  By the time of the events that gave rise to this case, he was the store's Operations Manager.  And he does not state that it was improper for the Operations Manager to be tasked with the responsibility of closing and opening the store.  Concerning the claim that Mr. Cruz canceled plaintiff's days off and vacations after having approved them, the record is silent as to what happened to those days.  With respect to the two-week delay plaintiff faced in being reinstated after a hospitalization, Mr. Cruz did not know how to reactivate plaintiff in the system (Docket No. 71-2, p. 23).  There is no evidence negating Mr. Cruz' lack of knowledge.  Moreover, the vacation cancellations seem to have occurred on May 9, 2017, and April 20, 2019 (Docket Nos. 81-9; 81-21, p. 1) and the reinstatement delay on July 21, 2017 (Docket No. 81-6), which would place those incidents outside of the actionable period.  In a deferral jurisdiction like Puerto Rico, Title VII requires claimants to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") or the corresponding state deferral agency within 300 days of the employment action complained of.  Each discrete discriminatory act starts a new clock for filing charges involving that act.  See, National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)(addressing topic).  Those acts are "easy to identify, and instantaneously actionable."  Ayala, 780 F.3d at 57.  That was the case here in connection with both vacations and lack of immediate reinstatement, given that plaintiff filed charges with the EEOC and the deferral agency on July 22, 2020 (Docket No. 1, ¶ 6).

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 11

period of time." Boston Medical Center Corporation, 131 F.4th at 18. As such, whether an environment is hostile or abusive is determined by looking at the totality of circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. See, Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)(examining topic).

On this account, to carry the day plaintiff must present admissible evidence that: (1) he is a member of the protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was motivated in part by sex; (4) the harassment was severe or pervasive, so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so; and (6) there is some basis for employer liability. See, Roy v. Correct Care Solutions, LLC, 914 F.3d 52, 61-62 (1st Cir. 2019)(articulating and explaining test). This standard "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Aponte-Rivera v. DHL, 650 F.3d 803, 808 (1st Cir. 2011).

Turning to the record, plaintiff is a member of a protected class. However, what he complains about does not preclude summary judgment. Along this line, he alleges that Mr. Montero: (1) called him "faggot;"[12] (2) yelled at him in front of other people and on one occasion

_____

[12] In plaintiff's opposition to summary judgment, he alleges that Mr. Montero repeatedly called him a "faggot." See, ASUF ¶¶ 10, 11, 35, 39, 41, 76, 78, 79. Yet, there is no evidence on the record of this specific term being uttered by anyone. In plaintiff's sur-reply, he clarifies that the parties did not agree on a translation for the term "loca" or "loquita," and that the term was incorporated in plaintiff's summary judgment materials due to attorney error. See, Docket No. 90, pp. 11-12. Upon close review of the record, the court finds that all references by plaintiff to the word "faggot" are based on an uncertified translation of the words "loca" or "loquita." Therefore, the court will disregard

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 12

called him "stupid" (see, ASUF ¶ 12; Docket No. 81-2, ¶ 8);[13] and (3) treated him as if he were his

subordinate when in fact plaintiff was his supervisor (see, ASUF (Docket No. 81), ¶ 8; Docket

Nos. 81-1, ¶ 8; 81-2, ¶ 15). Further, plaintiff asserts that Mr. Cruz: (1) excluded him from staff

meetings; (2) refused to speak to him in person and would mostly speak to him via WhatsApp, text

messages, or using other employees who were plaintiff's subordinates; (3) did not include plaintiff

from the store's employee group chat in WhatsApp; (4) ignored plaintiff's input regarding matters

pertaining to the job; (6) gave Mr. Montero more authority than plaintiff even though plaintiff was

Mr. Montero's supervisor; (7) commented on plaintiff's clothing; and (8) scolded plaintiff

publicly, but not other employees. See, ASUF (Docket No. 81), ¶ 23.[14]

Discounting the untranslated comments mentioned in note 12, there is not much going for

plaintiff. Apart from the lack of translation, from the record as it stands, those comments were not

made in plaintiff's presence, and from the submissions, he was not made aware of them while he

---

all references on the record to the word "faggot." In addition, plaintiff relies on Ms. Mercado and Mr. Morales' unsworn statements to support the assertions that Mr. Montero made several remarks in the Spanish language, e.g., "la loquita esta," which was allegedly uttered "out loud in the hallway of the store" (see, ASUF ¶ 10; Docket No. 81-1, ¶ 9); "mira a este tipo con esos pantalones puteaos" (see, ASUF ¶ 30; Docket No. 81-2, ¶ 25); "mira a este con esos pantalones to' pegaos y apretaos" (id.); "éste se cree que es una señorita" (see, ASUF ¶ 29; Docket No. 81-1, ¶ 15); "qué jodienda con la loca esta!" (see, ASUF ¶ 35; Docket No. 81-1, ¶ 18); and "la loca esa" (see, ASUF ¶ 39; Docket No. 81-1, ¶ 19). Those remarks were presented in the Spanish language without a certified translation, and as such will not be considered. See, Local Civ. R. 5(c)(documents not in English must be accompanied by a certified translation into English); 48 U.S.C. § 864 (proceedings in the District Court of Puerto Rico must be conducted in English).

[13] The incident from which this aspect of the claim arises is described in the accompanying Appendix.

[14] According to Ms. Mercado, if plaintiff was helping her with some tasks, Mr. Cruz could say things like "Josian [plaintiff] what are you doing here," "[i]s that what you are doing" (Docket No. 81-1, ¶ 11). She characterizes this as scolding, and claims that Mr. Cruz yelled at plaintiff when he said that. Id. Also, she stated that Cruz commented in front of plaintiff that plaintiff liked working at the beauty department, that the department was for women (id., ¶ 20) and told plaintiff, "really in those clothes, all tight like this Josian?" Id., ¶ 30.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 13

was employed with CVS.[15]  As the Supreme Court has made clear, to be actionable, a hostile work environment must be "both objectively and subjectively offensive."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Harris, 510 U.S. at 21 (referring to objective and subjective components of hostile work environment claim).  So, a claimant could not subjectively perceive behavior or comments as hostile unless he knew about them.  See, White v. Gov't Emps. Ins. Co., 457 Fed.Appx. 374, 381 n. 32 (5th Cir. 2012)(noting that because there was no evidence that plaintiff was aware of the remarks made behind her back, those remarks could not have contributed to a hostile work environment); Cottrill v. MFA, Inc., 443 F.3d 629, 636 (8th Cir. 2006)(given that plaintiff was not aware of peeping, she may not rely on it to establish that her work environment was hostile); Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000)(harassment directed toward others of which plaintiff was unaware can have no bearing on whether she reasonably considered her work environment abusive); Pryor v. Seyfarth Shaw, Fairweather & Geraldson, 212 F.3d 976, 978 (7th Cir. 2000)(supervisor's alleged leering at employee without employee knowing it considered irrelevant to employee's sexual harassment claim); Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir. 2000)(allegations of plaintiff's co-employees of sexual harassment by manager deemed irrelevant to plaintiff's hostile work environment claim in absence of evidence

---

[15] In his deposition, plaintiff admitted that Mr. Cruz did not make any comments to him about plaintiff's sexual orientation, but that in one instance Ms. Mercado told him that Mr. Cruz had made a comment regarding that orientation (Docket No. 81-4, p. 9).  It is not clear what that comment was.  In her unsworn statement, Ms. Mercado does not state that she informed plaintiff of any such inappropriate comments (at least while he was employed with CVS). See, generally, Statement at Docket No. 81-1.  Neither does Mr. Morales.  See, generally, Statement at Docket No. 81-2.  To be sure, both Ms. Mercado and Mr. Morales express to have heard callous, derogatory or offensive comments, but do not state that plaintiff heard them except for the reference to him being gay in the incident described in the Appendix and the beauty department comment referred to in note 14, supra.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 14

that plaintiff was contemporaneously aware of the alleged harassment).[16]  Compare with, Abbot

v. City of Houston, 28 F.4th 601, 612 (5th Cir. 2022)(reversing summary judgment in case where

plaintiff was still employed when she learned what superiors were doing behind her back.  As

Judge Ho observed in concurrence, however, the claim would not have been viable had plaintiff

learned of the misconduct only after she left city employment).

With this in mind, the comments or actions proffered here –e.g., that Mr. Cruz excluded

plaintiff from staff meetings; (2) refused to speak to him in person and would mostly speak to him

via WhatsApp, text messages, or using other employees who were plaintiff's subordinates; (3) did

not include plaintiff on the store employee group chat in WhatsApp; (4) ignored plaintiff's input

regarding matters pertaining to the job; (6) gave Mr. Montero more authority than plaintiff even

though plaintiff was Mr. Montero's supervisor; (7) commented on plaintiff's clothing; and (8)

scolded plaintiff publicly, but not other employees[17] –do not add up to a cognizable hostile work

environment.  See, Johnson v. Weld County, Colorado, 594 F.3d 1202, 1216 (10th Cir. 2010)(that

plaintiff's supervisors gave her the cold shoulder, sat farther away from her at meetings, became

too busy to answer her questions, and generally tried to avoid her, insufficient to sustain plaintiff's

claim); Recio v. Creighton University, 521 F.3d 934, 940-941 (8th Cir. 2008)(silent treatment by

other faculty members and plaintiff's exclusion from a picture of the faculty posted on its website

amount to no more than nonactionable petty slights); Ulrich v. Moody's Corp., 2014 WL 4977562,

---

[16] See also, Harrell v. Orkin, LLC, 876 F.Supp.2d 695, 705 (E.D. La. 2012)(inasmuch as plaintiff was not aware of alleged slurs, co-employee's testimony that he heard management use offensive language was insufficient to defeat summary judgment on plaintiff's hostile work environment claim); Bradshaw v. Golden Rd. Moto Inn, 885 F.Supp. 1370, 1381 (D. Nev. 1995)(supervisor's routine vulgar references to plaintiff could not support a hostile work environment claim because plaintiff was unaware of the comments, and to show that she perceived the environment as hostile, she must at least have been aware of those comments).

[17] As to the last item, refer to note 15, supra.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 15

*12 (S.D. N.Y. Sept. 30, 2014)(that supervisor did not reach out to plaintiff promptly after plaintiff was hired, did not call him frequently enough for plaintiff's liking, did not schedule meetings with plaintiff in the manner plaintiff preferred, and was not as nice to plaintiff as another supervisor, does not show hostility because of plaintiff's membership in protected class).[18]

Moreover, there is no evidence that the conduct at issue was physically threatening;[19]or about its frequency. See, SUF (Docket No. 71), ¶¶ 9, 14, 90.[20] What is left are undoubtedly remarks made in bad taste and actions suggestive of bad management that do not reach the threshold needed to withstand summary judgment. See, Colón-Fontánez, 660 F.3d 17, 44-45 (1st Cir. 2011)(that, among other things, the supervisor once threw plaintiff and a co-worker out of her

---

[18] This line of cases also disposes of plaintiff's challenge to the attitude and remarks that he has attributed to Mr. Montero, e.g., that Montero yelled at him in front of other people, on one occasion called him "stupid," and treated him as if he were his subordinate when in fact plaintiff was Mr. Montero's supervisor.

[19] Compare, Vega-Colón, 625 F.3d at 32-33 (dismissing hostile work environment claim under USERRA because, among other things, the complained of name calling was not physically threatening), with Hamilton v. Norristown State Hospital, 2024 WL 3623521, **2, 9 (E.D. Pa. Aug. 1, 2024)(supervisor stuck out a leg tripping plaintiff, and physically pushed her).

[20] Compare, Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 93 (1st Cir. 2018), where plaintiff complained that she was taunted about her age nearly every single day or nearly every single day for over two years, being called "old" and "useless," chastised for supposedly lacking the skills necessary to adequately fulfill the roles of her job because her age rendered her "slow," told that given her age, she should seek social security benefits, with the suggestion that because she was perceived as being too old for the job, she should resign before being forcibly discharged, and she was yelled and screamed at; Vera v. McHugh, 622 F.3d 17, 21 (1st Cir. 2010), where plaintiff was required to share an office with the alleged harasser for three months, and during that time frame she complained of constant invasion of her space, in that the harasser would sit and stare at her, block the door when she tried to leave, move his chair so that their legs were touching, and stand so close behind her that she could feel his breath; Rosario v. Dept. of Army, 607 F.3d 241, 247 (1st Cir. 2010), where record contained evidence that throughout a two-year period, a coworker complained about the plaintiff's appearance on a daily basis; regularly drew the attention of her coworkers to her body and undergarments, shadowed her closely when she interacted with patients, challenged her decisions, mocked her when she spoke to him, on occasion, described her as a street woman to other employees, and criticized her to doctors and patients; White v. N.H. Dept. of Corrections, 221 F.3d 254, 260 (1st Cir. 2000)(record reflected daily, consistent and continuing graphically-repugnant comments); and Norristown State Hospital, 2024 WL 3623521 at 9 (supervisor yelled and berated plaintiff on a daily to weekly basis), with Hunter v. General Motors LLC, 2019 WL 1436847, **10-11 (E.D. Mich. Mar. 31, 2019)(that plaintiff's supervisor called male workers rock stars, talked down to plaintiff, did not take her suggestions seriously, blamed her twice for two mistakes by male coworkers over a one-year period and did not permit her to work from home, not sufficiently severe, and given that plaintiff did not present much evidence regarding the frequency of the complained of conduct, the record did not show that she was subjected to a pervasive hostile work environment).

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 16

office, yelling at them in front of other employees; when plaintiff left her desk to go to the bathroom, the supervisor or someone designated by her would follow plaintiff; and co-workers told plaintiff on several occasions to get on social security or apply for disability so that she could receive an assured check; called her a hypochondriac; and claimed she was faking it, did not raise to the level of a hostile work environment); Vega-Colón v. Wyeth Pharms., 625 F.3d 22, 44-45 (1st Cir. 2010)(in action under the Uniformed Services Employment and Reemployment Act, that on one occasion a supervisor asked plaintiff if his military training was similar to the American military movie "Rambo," and that the same and another supervisor repeatedly referred to plaintiff as "soldier," "little soldier," and "sergeant," found insufficient to establish an abusive working environment); Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 53, 56-57 (1st Cir. 2006)(that in one year supervisor called plaintiff "gray haired," said that plaintiff looked like a certain co-worker who was considered to be slow and incompetent, and noted that plaintiff was a pharmacist and all pharmacists are homosexuals; and coworkers asked plaintiff if he was gay and called him cockatoo because of his gray hair did not qualify as a hostile work environment). [21]   Thus, the hostile work environment claim must be dismissed.[22]

   3.  Retaliation.

   Plaintiff alleges defendants violated Title VII by retaliating against him after he complained of discrimination (Docket No. 1, ¶¶ 70-74).  Title VII bars employers from retaliating

---

[21]  See also, Alvarado v. Donahue, 687 F.3d 453, 461-462 (1st Cir. 2012) (no hostile work environment with three incidents in one year during which a supervisor derisively told plaintiff's coworkers to give plaintiff the pill, presumably mocking the fact that plaintiff audibly sang to himself while working; in another instance the supervisor told plaintiff that he would put plaintiff to work with his family, which plaintiff understood as a threat to his continued employment, after plaintiff brought corn sticks for his coworkers; and when plaintiff showed a different supervisor an FMLA document which referenced his schizoaffective condition, the supervisor told him "crazy, crazy, you're crazy;" even though the supervisors were aware of plaintiff's psychiatric condition).

[22] The result does not change adding to the mix what plaintiff stated in connection with disparate treatment.

against an employee because said employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). There is no direct evidence of retaliation to support this claim. Nevertheless, plaintiff may attempt to demonstrate retaliation showing that: (1) he "engaged in protected conduct;" (2) that he "suffered an adverse employment action;" and (3) a causal nexus exists between the protected conduct and the adverse action. Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014). If the plaintiff makes this prima facie case, "the burden swings to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." Stratton v. Bentley Univ., 113 F.4th 25, 41-42 (1st Cir. 2024). Should the defendant satisfy this element, the burden travels back to the plaintiff to show that the articulated reason is pretextual and that retaliatory animus was the real motivating factor in the employer's calculus. Id. at 42.

Plaintiff states that he tried "to seek a resolution from HR from CVS Ethics Line" as to the alleged harassment and discrimination (Docket No. 1, ¶ 37). On this end, the court found four grievances in the record –Docket Nos. 81-12, 81-13, 81-14 and 81-15– where plaintiff seems to have complained of "disparate treatment and retaliation," and asserts that after the grievances he was subjected to "discriminatory treatment and retaliation." See, Docket No. 81, pp. 48-49. Internal complaints of discrimination are protected conduct under Title VII. See, Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 95 (1st Cir. 2006)(so recognizing). Yet plaintiff did not cite the grievances in his opposing or additional statements of fact, in violation of Fed. R. Civ. P. 56 and Local Civ. R. 56. He left them untied to any specific factual statement pertaining to a retaliatory act –leaving the court in the dark as to details. See, generally, Docket

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 18

No. 81.[23]  Under these circumstances, the court disregards them entirely.  And in the absence of protected conduct, there cannot be any proscribed retaliation.  See, Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys., 309 F.3d 433, 437 (7th Cir. 2002)("If there has been no protest about . . . discrimination on the basis of a protected category, there cannot have been any prohibited retaliation")(quotations omitted); Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3rd Cir. 2006)("Vagueness as to the nature of the grievance . . . prevents a protest from qualifying as a protected activity")(quotations omitted).

More important, the lack of evidence on whether Mr. Cruz –the alleged retaliator– knew about that protected activity, obstructs the court's ability to evaluate the causation element of the action.  Unlike with a Title VII substantive discrimination claim, in a retaliation case the plaintiff must show that the employer "would not have taken the adverse action but for a desire to retaliate." Bentley Univ., 113 F.4th at 44.  Without evidence of the decisionmaker's knowledge of the protected conduct, the adverse action could not have been caused by a desire to retaliate against the plaintiff.  Id. at 45.  On this basis, the Title VII retaliation claim must be dismissed.[24]

---

[23] The additional statements that *do* reference plaintiff's internal grievances to any degree, are not supported by the evidence cited –mainly, Ms. Mercado and Mr. Morales' unsworn statements, and they fail to establish the basis for their personal knowledge of the matters asserted (see, Fin. Res. Network, Inc. v. Brown & Brown, Inc., 867 F.Supp.2d 153, 171 (D. Mass. 2012)(affidavits containing conclusory statements not based upon personal knowledge, but rather on assumptions, are "given no weight in opposition to defendants' motion for summary judgment")– or are otherwise insufficient for any one of the other types of deficiencies listed in note 3, supra.  See, generally, ASUF (Docket No. 81), ¶¶ 32, 33, 72, 76, pp. 11-12, 24-30.

[24] In Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that Title VII's antiretaliation provision covers all "materially adverse" actions, including those not directly related to an employee's job.  Id. at 57.  The Court explained that an action is materially adverse if it could well dissuade a reasonable worker from making or supporting a charge of discrimination.  Id.  Given that the retaliation claim fails for lack of sufficient evidence of participation in protected activity and ultimately for lack of causation, there is no need to discuss whether plaintiff furnished enough evidence to establish the materially adverse action prong of the action.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 19

**B. FMLA.**

*1. Wrongful Disclosure.*

Plaintiff alleges that defendants violated the nondisclosure provisions of the FMLA set at 29 C.F.R. § 825.500(g) by "improperly and wrongfully disclos[ing] [his] medical and health information to other employees" (Docket No. 1, ¶ 81; ASUF (Docket No. 81), ¶ 51, p. 17). § 825.500(g) states that: "Records and documents relating to certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files." Defendants observe that § 825.500 does not give rise to a private right of action against an employer for its wrongful disclosure of an employee's medical information, an issue that has not been addressed by the First Circuit (Docket No. 72, p. 38).[25]

Plaintiff did not address this matter. See, generally, Docket Nos. 81 and 90. For that reason, the claim is deemed waived and must be dismissed. See, Montany v. Univ. of New England, 858 F.3d 34, 41 (1st Cir. 2017)(stating that failure respond to argument raised defendants' motion for summary judgment on a particular claim constitutes an abandonment of that claim). Even so, as to the alleged disclosure, plaintiff's ASUF (Docket No. 81), ¶ 51, directs the court's attention to Mercado and Morales' unsworn statements. Id. The statements are conclusory, except that the latter also states that the declarant and coworkers knew that plaintiff was in a psychiatric hospital because Mr. Cruz said it. But plaintiff did not submit evidence that Mr. Cruz revealed records or documents "created for purposes of FMLA." 29 C.F.R. § 825.500(g). Consequently, on the merits, the claim fails.

---

[25] It does appear to be an unsettled question whether a private cause of action exists for this type of claim in the first place. See, Schobert v. CSX Transportation Inc., 504 F.Supp.3d 753, 798 n. 12 (S.D. Ohio 2020)(addressing topic). However, the court need not reach the issue.

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 20

 2. *Interference*

Plaintiff complains of interference under the FMLA (Docket No. 81, pp. 52-53). The FMLA affords an "eligible employee" the right to "take twelve weeks of unpaid leave because of, among other things, a serious medical condition that renders the employee unable to do his job." McArdle v. Town of Dracut/Dracut Pub. Sch., 732 F.3d 29, 33 (1st Cir. 2013); 29 U.S.C. § 2612. Upon the employee's return from a qualified leave, "the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005)(brackets omitted); 29 U.S.C. § 2614(a)). To preserve and enforce these rights, the FMLA provides for two types of claims: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA;" and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA." See, Casta v. Citi Int'l Fin. Servs., LLC, 2020 WL 7670122, *7 (D.P.R. Dec. 23, 2020)(brackets and quotations omitted).

Plaintiff asserts that CVS interfered with the FMLA by delaying reinstatement following a leave of absence for a serious health condition, as it only reinstated him after several weeks and a legal communication from his counsel (Docket No. 81, pp. 52-53). To qualify for protection from interference, the employee must have worked for the employer (1) not less than 12 months, and (2) at least 1,250 hours in the 12-month period preceding the leave, provided the company employed (a) 50 or more employees in plaintiff's worksite, and (b) within 75 miles of that site. See, 29 U.S.C. §§ 2611(2)(A) & 2611(2)(B)(ii). Even though it is plaintiff's burden to show eligibility, there is no evidence that he worked at least 1,250 hours during a 12-month period

Marrero-Valentín v. Puerto Rico CVS Pharm. LLC; et al.
Civil No. 21-1330 (PAD)
Opinion and Order
Page 21

preceding the leave in question or that CVS employed 50 or more employees in the Hato Rey store and within 75 miles of that site.  Thus, the interference claim must be dismissed.

### C.  Supplemental Claims/CVS Holdings Status.

Considering the case posture, the court declines to exercise supplemental jurisdiction over the state claims except as stated in footnote 2, supra.  In light of this disposition, there is no need to rule on CVS Holding's argument that the claims asserted against it must be dismissed because it was never plaintiff's employer.

### V.    CONCLUSION.

For the reasons stated, defendants' motion for summary judgment (Docket No. 72) is GRANTED IN PART, to dismiss the federal claims and the Law 44 claim with prejudice, and the remaining state claims without prejudice.

Judgment shall be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 28th day of April, 2026.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge